IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CYNTHIA DYSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. |
| vs. ) | |
| ) | |
| VERIZON WIRELESS CORPORATION, ) | |
| ) | Jury Trial Demanded |
| Defendant. ) | |

## COMPLAINT

Plaintiff, Cynthia Dyson ("Cynthia"), by and through her attorneys, MICHAEL LEE TINAGLIA, and THE LAW OFFICES OF MICHAEL LEE TINAGLIA LTD., alleges for her complaint against Defendant, Verizon Wireless Corporation ("Verizon") as follows:

## NATURE OF THE CLAIMS

1. This lawsuit arises under Americans with Disabilities Act, 42 U.S.C. 12101 et seq. ("ADA"), Age Discrimination in Employment Act, 29 U.S.C. 621 et seq. ("ADEA") and Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000(e) ("Title VII").

## THE PARTIES

2. Plaintiff, Cynthia Dyson ("Cynthia"), is a white Caucasian female citizen, over 40 years of age, of Jewish ethnicity, residing at 12464 Ellwood Green Road, Genoa, Illinois 60135.

3. Cynthia is an employee of Verizon Wireless Corporation ("Verizon") currently on disability medical leave. Prior to going on disability leave, Cynthia worked as an analyst at the Verizon Call Center in Elgin, Illinois. Cynthia's medical condition

1

includes chronic rheumatoid arthritis, chronic headaches, post traumatic stress syndrome, anxiety and chronic pain syndrome.

4. Cynthia began her employment with Verizon Wireless on February 26, 2001. The unlawful employment practices alleged in this complaint were committed in the City of Elgin, County of Kane, and State of Illinois.

5. Verizon is a subsidiary of Verizon Communications, Inc., and owns and operates a wireless network across the United States. Verizon has a Call Center located at 777 Big Timber Road, Elgin, Illinois, and is an "employer" with more than fifteen employees within the meaning of Americans with Disabilities Act, 42 U.S.C. 12101 et seq. ("ADA"), Age Discrimination in Employment Act, 29 U.S.C. 621 et seq. ("ADEA") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) ("Title VII"). Verizon is qualified to do business and is actually doing business in the State of Illinois.

## JURISDICTION AND VENUE

6. Jurisdiction over Cynthia's claims is predicated on the ADA, ADEA, Title VII and 28 U.S.C. § 1331.

7. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. 1391 (b).

8. Cynthia filed her charge of discrimination against Defendant, Verizon on September 27, 2007, EEOC No. 440-2007-08215 and she received her Notice of Right to Sue from the EEOC on September 22, 2011. A copy of the charge and notice are attached to the complaint as Exhibits A and B.

## FACTS COMMON TO ALL CLAIMS

9. From about February 2001 through about March 2002, Cynthia worked for Respondent in its Elgin, Illinois Call Center as a customer service representative. She was promoted to Senior Customer Service Representative in March 2002. In March 2003, Cynthia became a part of the internet response team, and in the fall of 2003, she was promoted to coordinator within the internet response team. In November 2004, Cynthia was promoted to the position of Analyst, Resource Management.

10. In January 2005, Cynthia was told that the company was being "restructured," and her compensation was reduced in that her bonus was reduced from 10% to 6% and she was switched back to an hourly rate of pay.

11. From November 2004 to the time she went on disability leave, Cynthia's immediate superior was Sirena Williams ("Williams"), an African American female, under forty (40) years of age. Williams is non-white, under 40, non Jewish and is not possessing of a disability and is not perceived or regarded as disabled. Williams' title is Manager, Resource Management.

12. From shortly after Williams became Cynthia's supervisor to the time Cynthia went on disability leave, Williams engaged in an unlawful and discriminatory course of harassment, intimidation, physical and psychological abuse against Cynthia based upon Cynthia's age (over 40), her race (white Caucasian), her ethnicity and religion (Jewish), and her disability (chronic rheumatoid arthritis).

13. Non-exhaustive examples of Williams unlawful, discriminatory and harassing conduct include but by no means are limited to the following:

    a. Williams constantly referred to the fact that Cynthia was required to take medication as "drug use" making comments such as "the company fires addicts" and sending e-mails to Cynthia stating, "Stop hitting the pipe before I have to report you to HR."

    b. On numerous occasions, in November 2006, January 2007, March 2007 and April 2007, Williams actually threw office items at Cynthia. On one occasion Williams actually assaulted and battered Cynthia by hitting her with a training manual directly in the face in the presence of another co-worker. When Cynthia told Williams that such conduct was against company policy and asked her to stop, Williams replied with words to the effect of "Perhaps your arthritic ass would prefer to be in the gutter rather than employed, the gutter suits you better anyhow."

    c. On February 12, 2007, Williams stopped by Cynthia's work station and stated, "So this is what a [sic] old white mess looks like." Later, that same day, Williams passed by Cynthia's work station again and pointed at Cynthia's face as if her hand was a gun, and said, "Bang, bang, bye bye, cripple!" Williams then laughed and walked away. After this incident, Cynthia was upset and feared for her safety. This stress negatively impacted her health, and she was unable to work for two days following this incident.

3

d. On February 15, 2007, when Cynthia returned to work, Williams asked Cynthia if her "crippled ass" was now ready to work after her "two day drug binge." Williams also threatened Cynthia at this time, saying words to the effect of, "if you ever say a word, I will fire your white ass so fast your head will spin off your twisted body."

e. On February 20, 2007, Williams asked Cynthia if she "got a new drug dealer." Williams then went on to ask, "Is that kosher?" and laughed. She then made a reference to Jews, and continued on making comments such as "white people suck" and "can't be trusted." During this meeting Williams also made comments such as "white people messed up our world" and "your crippled ass proves my point." As a result of this meeting, Cynthia's health was adversely affected, and she was unable to work for two days following this incident.

f. On March 23, 2007, during a meeting with Cynthia, Williams spoke exceptionally slowly and repeated herself several times, while laughing loudly to allegedly "assist" Cynthia with comprehension due to "your age and drug use issues." During this meeting, Williams also paused, looked Cynthia over, and made a comment regarding "disabled garbage dump" and "white whale."

g. On May 10, 2007, Williams told Cynthia that she "hated cripples." Williams informed Cynthia that Williams wasn't going to tolerate Cynthia's "use of your disability any longer." She stated that Cynthia should be thankful that Williams had allowed her to keep a job this long. Williams then stated that she was starting a paper trail on Cynthia so that she could fire her as soon as possible. She told Cynthia, "Whitey, the free ride is over."

h. Williams also allowed and encouraged other employees in the Resource Management Department to harass Cynthia on numerous occasions. For example, on one occasion, another employee Myra Bivens, an African American under 40, donned a white paper cut out snow flake over her face claiming she was imitating an "old fat crippled Jew flake" while Williams and other workers laughed in observation.

14. As a result of the discrimination, harassment and because the hostile work environment created by Williams conduct and because of the constant physical and verbal attacks, in 2006 and 2007 Cynthia sought other employment opportunities away from Williams within Verizon. In each instance, Williams interfered with Cynthia's efforts to obtain a position away from Williams and deliberately sabotaged Cynthia's efforts to find alternative positions in Verizon.

4

15. While Cynthia made several attempts to obtain alternative positions which were thwarted by Williams, the following is an non-exhaustive example of Williams conduct:

   a. In late February 2007, Cynthia interviewed for a supervisor position within Verizon. She was called back for two additional interviews, one on March 2, 2007 and a final interview with Karen Todd, Elgin Call Center Director on March 16, 2007. To date, Cynthia never received any further word regarding this position.

   b. In a meeting held with Williams March 20, 2007, Cynthia told Williams that she hadn't heard any further regarding the position. Williams informed Cynthia that she (Williams) gave Cynthia an unfavorable recommendation, and that the only way that Cynthia would ever leave Williams' team was "with a box and a pink slip." Williams boasted that she had intentionally blocked Cynthia's promotion because there were too many "white faces in supervisor and manager roles now," and "I will be damned if I will help promote your fat old crippled ass."

   c. On May 10, 2007 Williams told Cynthia "at your age, you have a lot of nerve trying to get a promotion."

   d. On other occasions Williams would learn when Cynthia was interviewing and purposely schedule meetings that conflicted with the scheduled interview time. In one instance after rescheduling a meeting that then conflicted with an interview, Williams told Cynthia that if she didn't show up for the meeting, Williams would "get rid of [her] arthritic ass." Cynthia was forced to not attend the interview. When the interviewer called to speak with Cynthia, Williams informed the person that Cynthia was "unavailable."

16. On several occasions in 2006 and 2007 Cynthia reported Williams harassing behavior to Williams' direct supervisor, Bob Swartzbaugh. On each occasion, while Cynthia informed Swartzbaugh of Williams' conduct and identified the conduct as discriminatory, harassing and hostile, Swartzbaugh took no action and Williams' unlawful conduct increased in frequency and severity.

17. Cynthia also reported Williams' behavior to Verizon's Human Resource Department. On May 13, 2007, and May 23, 2007, Cynthia had a meeting with Aswaan Peters, Human Resource Manager (an African American man under 40 years old). Cynthia told Peters about the harassing treatment she was receiving from Williams.

5

Cynthia told Peters about Williams' verbal and physical abuse. She told Peters that Williams discriminated against her because of her age, because of her disability and because of her ethnicity. She also told Peters how Williams was actively blocking promotional opportunities for her. She informed Peters that not only did she fear losing her job, she was also afraid for her mental and physical safety.

18. On June 4, 2007, Cynthia met with Peters to learn of the status of her complaints about Williams. At that time, Peters informed Cynthia that he had been too busy to look into her concerns. Cynthia suggested that if he was too busy to assist her, perhaps she ought to speak to another person in HR. Peters then told her if she sought assistance from anyone else in HR, he would no longer assist her in finding a resolution to her situation.

19. On June 7, 2007, Cynthia contacted Verizon's Vice President of Human Resources, Martha Delahanty. Four days later Human Resource Associate Director Patrick Reilly contacted Cynthia to set up a meeting. On June 11, 2007, Cynthia repeated her concerns regarding Williams in detail, describing the discriminatory comments, the harassment, and retaliation. She specifically told him of how Williams had turned her co-workers against her by telling them she, Cynthia, was making complaints to HR about them. During this meeting, Reilly assured Cynthia, that Verizon would "make it right."

20. Cynthia followed up with Reilly in an email sent June 19, 2007. In his response, Reilly apologized for the delay, but noted that Cynthia's concerns were "being investigated further" and that "we'll follow up with you when that is complete."

21. After Cynthia reported Williams' behavior to human resources, Williams' behavior became more harassing. Williams told Cynthia's co-workers that Cynthia had been to human resources complaining about her co-workers. Williams made comments about Cynthia for the express purpose of alienating Cynthia from her co-workers. One co-worker called Cynthia a bitch for complaining about her co-workers. Other co-workers refused to speak with Cynthia, commenting that they were taking Williams' advice and no longer speaking with Cynthia.

22. On June 8, 2007 Williams removed certain of Cynthia's job responsibilities, and gave them to Myra Bivens, an African American female under the age of 40. In doing so Williams stated that Cynthia "lacks concentration" and this

typically afflicts persons "of her age and condition." Williams then proceeded to make a rude gesture with her middle finger inches away from Cynthia's face, laughed, and walked away.

23. In June of 2007, Williams confronted Cynthia at her workstation, and told her that she was not going to let an "old crippled white bitch" make her look bad, and that she was sick of hearing Cynthia's name.

24. On June 13, 2007, Rachel McLaurin, Project Manager of Resource Management contacted Cynthia and asked her to compile some training completion numbers for her. Cynthia responded that she would provide the information as requested. A few minutes later, Williams angrily approached Cynthia's workstation, telling Cynthia, "what the fuck do you think you are doing you fat crippled bitch? I have told you never, ever to communicate in any way, shape or form to my boss! I will fire your ugly white ass if you do it one more fucking time, white bitch!"

25. On June 20, 2007, Cynthia communicated her concerns to Bob Swartzbaugh that Williams was increasing her retaliation against her for seeking other positions within Verizon, and for contacting human resources about the way Williams was treating her. She informed him that Williams had made it clear to her that Williams had interfered with past promotional opportunities, and would continue to do so. She told Swartzbaugh that because of fear of escalating retaliation, she no longer felt safe pursuing promotional opportunities, and as such, she was declining the interview which was offered to her for the position of Resource Management in Verizon's Lincoln, Nebraska call center.

26. On June 29, 2007, Cynthia sent a certified letter to both Delahanty, VP of Human Resources in New Jersey, and Patrick Reilly, Associate Director of HR at the Elgin Call Center detailing some of the behavior that Williams subjected her to and demanding that Verizon Wireless take action to resolve the situation, however, to date, there has been no response from either Reilly or Delahanty.

27. As a result of the aggravation and stress caused by the apparent discriminatory animus that was openly demonstrated by Williams and other Verizon employees, Williams' constant verbal attacks, and attempts to sabotage Cynthia's career, and the unwillingness of Verizon management to address this harassment and

7

discrimination, Cynthia became physically and psychologically ill and she was forced to take a medical disability leave from her job.

## COUNT I
## UNLAWFUL DISCRIMINATION BASED ON AGE

28. Cynthia repeats and realleges Paragraphs 1 through 27 as Paragraphs 1 through 27 of this Count I, as though they are fully stated herein.

29. Williams and Verizon discriminated against Cynthia and treated her differently because of her age by: (a) constantly harassing her by calling her old, making reference to her age in relation to her attempts to secure a promotion and making reference to her "concentration;" (b) making slanderous and untruthful statements regarding Cynthia's competency in her position in emails and orally to other Verizon employees, including her co-workers and supervisors; (c) denying her promotional opportunities, and removing job responsibilities from her; (c) continuously and systematically refusing to address Cynthia's complaints of age based comments and harassment in the work place; (d) allowing the age based harassment to continue and failing to correct the age based harassment and discrimination based on age at all levels of management; (e) showing favoritism toward younger workers such as Myra Bivens and Petrina Rice with regard to workload and other terms and conditions of employment; and (f) creating and allowing the continuation of a hostile work environment that was objectively and subjectively intolerable.

30. But for her age, Cynthia would not have been harassed, denied promotions and forced to take disability leave. The harassing and discriminatory treatment of Cynthia on the basis of age is in violation of the Illinois Human Rights Act and the Age Discrimination in Employment Act, 29 U.S.C. 621 et seq.

## COUNT II
## UNLAWFUL DISCRIMINATION BASED ON DISABILITY

31. Cynthia repeats and realleges Paragraphs 1 through 27 as Paragraphs 1 through 27 of this Count II, as though they are fully stated herein.

8

32. Williams and Verizon discriminated against Cynthia and treated her differently because of her disability, or because they perceived and/or regarded Cynthia as disabled, by: (a) constantly referring to her doctor prescribed medications as "drugs", calling her an "addict," making reference to days where Cynthia was unable to work as a result of her disability as "drug binges" and referring to Cynthia's need for medication to control her rheumatoid arthritis as "drug use," among other derogatory comments; (b) making references to "your arthritic ass;" (c) making slanderous and untruthful statements in emails making reference to drug use on the part of Cynthia in an effort to tarnish her reputation within the company; (d) denying her promotional opportunities, and removing job responsibilities from her; (e) continuously and systematically refusing to address Cynthia's complaints of disability based comments and harassment in the work place; (f) allowing the disability based harassment to continue and failing to correct the disability based harassment and discrimination based on disability at all levels of management; (g) showing favoritism toward non disabled workers such as Myra Bivens and Petrina Rice with regard to workload and other terms and conditions of employment; and (h) creating and allowing the continuation of a hostile work environment that was objectively and subjectively intolerable.

33. But for disability or for Verizon and Williams regarding or perceiving her has having a disability, Cynthia would not have been harassed, denied promotions and forced to take disability leave. The harassing and discriminatory treatment of Cynthia on the basis of disability is a violation of the ADA.

## COUNT III
## UNLAWFUL DISCRIMINATION BASED ON RACE/COLOR

34. Cynthia repeats and realleges Paragraphs 1 through 27 as Paragraphs 1 through 27 of this Count III, as though they are fully stated herein.

35. Williams and Verizon discriminated against Cynthia and treated her differently because of her race/color by: (a) constantly referring to her as "white bitch," and making derogatory comments to her regarding "white people;" (b) intentionally denying and blocking Cynthia from promotional opportunities because of Williams' stated perception that there were too many "white faces" in supervisor and manager roles;

9

(c) continuously and systematically refusing to address Cynthia's complaints of race/color based comments and harassment in the work place; (d) allowing the race/color based harassment to continue and failing to correct the race/color based harassment and discrimination based on race/color at all levels of management; (e) showing favoritism toward non white/Caucasian workers such as Myra Bivens and Petrina Rice with regard to workload and other terms and conditions of employment; and (f) creating and allowing the continuation of a hostile work environment that was objectively and subjectively intolerable.

36. But for her race/color, Cynthia would not have been harassed, denied promotions and forced to take disability leave. The harassing and discriminatory treatment of Cynthia on the basis of race/color is in violation of the HRA and Title VII.

## COUNT IV
## UNLAWFUL DISCRIMINATION BASED ON RELIGION

37. Cynthia repeats and realleges Paragraphs 1 through 27 as Paragraphs 1 through 27 of this Count IV, as though they are fully stated herein.

38. Williams and Verizon discriminated against Cynthia and treated her differently because of her religion by: (a) making pointed comments to Cynthia regarding Jews, knowing that Cynthia is of Jewish descent, including making discriminatory comments to Cynthia, and then asking "is that kosher?;" (b) intentionally denying and blocking Cynthia from promotional opportunities because of her religion and Jewish descent; (c) continuously and systematically refusing to address Cynthia's complaints of discriminatory comments and harassment based upon Cynthia's religious identity in the work place; (d) allowing the harassment based upon religious identity to continue and failing to correct the harassment and discrimination based on religious identity at all levels of management; (e) showing favoritism toward non Jewish workers such as Myra Bivens and Petrina Rice with regard to workload and other terms and conditions of employment; and (f) creating and allowing the continuation of a hostile work environment that was objectively and subjectively intolerable.

39. But for her religion and ethnicity, Cynthia would not have been harassed, denied promotions and forced to take disability leave. The harassing and discriminatory treatment of Cynthia on the basis of religion is in violation of Title VII.

## COUNT V
## HOSTILE WORK ENVIRONMENT

40. Cynthia repeats and realleges Paragraphs 1 through 39 as Paragraphs 1 through 39 of this Count V as though they are fully stated herein.

41. As a result of the continued harassment and discrimination which was allowed to continue and escalate even after Cynthia informed managers at all levels of Verizon, an intolerable and hostile work environment was created by the Respondent and said hostile environment constituted a violation of the ADA, ADEA and Title VII.

## COUNT VI
## UNLAWFUL RETALIATION

42. Cynthia repeats and realleges paragraphs 1 through 39 as paragraph 1 through 39 of this Count VI, as though they are fully stated herein.

43. Cynthia engaged in protected activity when she complained of Williams conduct, her unlawful discrimination, harassment and physical and verbal abuse to Swartzbaugh, Peters, Delahanty and Reilly.

44. As a result of Cynthia's protected activity, Verizon and Williams retaliated against Cynthia by further harassment, verbal and physical assaults, denial of promotional opportunities, alienation of co-workers and other discriminatory and retaliatory conduct.

## PRAYER FOR RELIEF

45. As a result of the unlawful and discriminatory conduct of Verizon and Williams, Cynthia was discriminated and retaliated against on the basis of age, disability, race, color, religion, and exposed to a hostile work environment and retaliation.

46. As a direct result of Williams and Verizon's unlawful conduct, Cynthia suffered actual damages including but not limited to, the loss of promotional opportunities, lost wages, and lost benefits.

47. As a direct result of Williams and Verizon's unlawful conduct, Cynthia has suffered compensatory damage, severe emotional distress, physical and psychological illness, pain and suffering, humiliation and damage to her professional and personal reputation, and has been forced to discontinue working, and is currently on disability leave.

WHEREFORE, Plaintiff, Cynthia Dyson, respectfully seeks the entry of judgment in her favor and against Defendant, Verizon and the following:

A. Actual damages in the form of lost compensation and benefits which Plaintiff, Cynthia has suffered;

B. Actual damages in the form of future lost wages and front pay;

C. Actual damages in the form of prejudgment interest on all lost compensation and benefits and all monies awarded to Plaintiff;

D. Award Plaintiff compensatory damages for intentional discrimination and retaliation, humiliation, embarrassment, loss of reputation, loss of dignity, substantial emotional pain and emotional distress, mental anguish, and Defendant's interference with Plaintiff right to pursue her career free from intentional discrimination;

E. Enter a declaratory judgment that Defendant's actions constitute unlawful intentional discrimination or retaliation for engaging in protected activity in violation of the ADA, ADEA and Title VII;

F. Award Plaintiff all attorneys' fees, expenses and costs incurred herein;

G. Award Plaintiff punitive damages and assess punitive damages against Defendant Verizon;

H. And such further relief which this Honorable Court deems just ad equitable to make Plaintiff whole in accordance with ADA, ADEA and Title VII.

Dated: December 15, 2011.

>Respectfully submitted,
>CYNTHIA DYSON, Plaintiff
>
>By: s/Michael Lee Tinaglia

MICHAEL LEE TINAGLIA
Law Offices of Michael Lee Tinaglia, Ltd.
9700 West Higgins Road - Suite 1015
Rosemont, Illinois 60018
Phone: (847) 692-0421; Fax: (847) 685-8440
Cook Attorney #22869; ARDC #2835886
mltinaglia@tinaglialaw.com